J. Bryant Kasey and Maryann Kasey, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 3087–67.   Filed August 25, 1970.

J. Bryant Kasey and Maryann Kasey, pro se.
*Eugene H. Ciranni,* for the respondent.

## OPINION

The primary issue for decision concerns the deductibility of expenses related to litigation conducted by petitioner during the taxable years in question. These expenses consist primarily of travel costs incurred in the course of such litigation. Additional litigation-related expenses, also at issue in this case, consist of rent and utilities expenses allocable to the use of petitioner's home and dormitory as a business office principally for the purpose of conducting litigation. Respondent

maintains that the alleged litigation expenses constituted capital expenditures in defense of title to property rather than currently deductible expenses incurred in the production of income under section 212. Petitioner's position is to the contrary.

Petitioner, a mining engineer employed in such capacity between 1962 and 1966, also engaged for many years prior to and during the taxable years at issue in prospecting activities with the expectation of locating valuable mining claims. Petitioner located numerous mining claims in 1950 and in 1951 sold a number of these claims to Molybdenum for the sum of $150,000, plus the right to receive royalties with respect to minerals extracted from such mining claims. The terms of the sale are set forth in detail in an agreement dated June 11, 1951, between the parties. Pursuant to this agreement the mining claims were in fact deeded to Molybdenum on September 21, 1951. Petitioner received royalties in 1952 amounting to $37,128.34 but thereafter, as a result of a dispute respecting the interpretation of the sale agreement, received no further royalty payments. The dispute between petitioner and Molybdenum resulted in a complex series of lawsuits, the first of which was instituted by Molybdenum against petitioner in 1953. We are requested to and do take judicial notice of several reported opinions which resulted from the foregoing litigation. A careful examination of this litigation is necessary to the resolution of the issue before us.

In the first of the cases, *Kasey* v. *Molybdenum Corporation of America*, 1 Cal. Rptr. 393 (1959), petitioner brought an—

action for declaratory relief respecting plaintiff's alleged right to use certain roads and develop certain ore deposits in the Clark Mountain Mining District of San Bernadino County; for an injunction to prevent interference with such rights; and for the determination of the title of the parties to certain mining claims.

The principal controversy in that case arose from the location by Molybdenum, after the execution of the agreement but before the transfer of the deed to the various mining claims, of a new claim referred to as Betty Anne, the discovery point of which embraced all or part of the claims deeded by Kasey to Molybdenum, including a claim called Somnabulist Fraction No. 1. Under the agreement, the substance of which is set forth in part above in our Findings of Fact, royalties were payable only with respect to mining claims of petitioner which were valid at the time of sale. Furthermore, under section Ninth, a key provision of the agreement which became the focal point of the litigation, Molybdenum retained the right, notwithstanding the execution of the agreement, to contest the validity of petitioner's mining claims and assert the superiority of its own overlapping claims. On this basis Molybdenum refused to pay royalties to petitioner as to

Somnabulist Fraction No. 1, alleging that it possessed a superior claim by virtue of the location of Betty Anne. The court concluded, *inter alia*, that petitioner's title to Somnabulist Fraction No. 1 was valid at the time of sale within the meaning of the agreement and he was therefore entitled to royalties with respect to such claim.

In the second action, *Molybdenum Corporation of America* v. *Kasey*, 1 Cal. Rptr. 400 (1959), Molybdenum sought "an adjudication that [would] relieve it of the obligation to pay royalt[ies] on minerals mined by it from the claims in question" while Kasey sought a contrary adjudication. The court, although stating that "All decisions in this case necessarily depend to some degree on the priority and validity of the various claims," decided the issue presented primarily on the basis of its interpretation of several ambiguous clauses of the agreement. The issue in that case arose, as in the former one, from the fact that Molybdenum was obligated to pay royalties only with respect to valid mining claims of petitioner. Molybdenum sought a declaratory judgment freeing itself of the obligation to pay royalties on the ground that petitioner's claims were invalid at the time of sale. The court determined which of the claims deeded to Molybdenum were subject to the payment of royalties to petitioner.

In addition to the foregoing State court litigation, petitioner instituted an action in the Federal District Court of California for "recovery of certain mining properties, for an accounting, and for damages," which action was decided in favor of Molybdenum on the ground that the action was precluded by the 5-year California statute of limitations applicable to real property. This decision was upheld on appeal to the Ninth Circuit. *Kasey* v. *Molybdenum Corporation of America*, 336 F. 2d 560 (C.A. 9, 1964).

While petitioner and respondent have referred in the course of trial to all of the above-mentioned cases, it is presumably in connection with the Federal litigation last described, conducted during the taxable years in question, that the claimed litigation expenses were incurred. Therefore, it is the nature of the 1964 case which, we think, controls the disposition of this issue. The California cases decided in 1959, prior to the taxable period in question, are deemed relevant to the present inquiry only to the extent they may reflect upon the nature and background of the 1964 decision. We are persuaded, based upon our careful examination of such case, that the litigation expenses attributable thereto must be characterized as either the cost of defending or perfecting title to property, or as a personal expense. In either case the costs of litigation are not currently deductible.

The law applicable to the instant controversy is generally well settled. The cost of defending or perfecting title to property is treated as

a capital expenditure within the meaning of section 263,[5] and hence is not deductible. Sec. 1.263(a)-2(c), Income Tax Regs.; *Farmer* v. *Commissioner*, 126 F. 2d 542 (C.A. 10, 1942), affirming on this issue sub nom. *Central Material & Supply Co.*, 44 B.T.A. 282 (1941); *Jones Estate* v. *Commissioner*, 127 F. 2d 231 (C.A. 5, 1942), affirming 43 B.T.A. 691 (1941); *Porter Royalty Pool, Inc.*, 7 T.C. 685 (1946), affd. 165 F. 2d 933 (C.A. 6, 1948), certiorari denied 334 U.S. 833 (1948). Moreover, expenditures in connection with unsuccessful litigation to establish an interest in property constitute a nondeductible personal expense. *Marion A. Burt Beck*, 15 T.C. 642 (1950), affirmed per curiam 194 F. 2d 537 (C.A. 2, 1952), certiorari denied 344 U.S. 821 (1952).

The specific action in the 1964 case, described above, appears on its face to have been brought by petitioner for the primary purpose of reclaiming title to the mining claims deeded in 1951 to Molybdenum, on the ground that the agreement was void. Unlike the 1959 cases which involved principally petitioner's entitlement to royalties under the agreement and peripherally the determination of the validity of petitioner's title to the claims in question at the time of sale, the 1964 litigation involved as its principal issue the adjudication of present title to the mining claims. While the 1959 litigation may arguably fall within the category of expenses deductible under section 212, as having been incurred for the production of income (see, e.g., *Pierce Estates, Inc.*, 3 T.C. 875 (1944)), the 1964 case in our view must be regarded purely as an adjudication of the title to the mining claims. As such, legal expenses incurred in its unsuccessful prosecution by petitioner are personal expenditures and thus are not deductible. *Marion A. Burt Beck, supra.*

We consider this conclusion unaffected by petitioner's inclusion in his 1964 action of a request for an accounting and for damages. Petitioner's right to receive an accounting or damages was wholly dependent upon and incident to the resolution of the primary issue, viz, the determination of title, and it is clear that the litigation concerned exclusively this issue. The request for accounting and damages attending petitioner's attempt to recover title to property formerly deeded to another cannot, under the circumstances of this case, vary the fundamental character of the litigation which was the determination of title. *Porter Royalty Pool, Inc., supra*; *Safety Tube Corp.* v. *Commissioner*, 168 F. 2d 787 (C.A. 6, 1948), affirming 8 T.C. 757 (1947). Looking to the 1964 case alone, in the absence of petitioner's introduction of

---

[5] SEC. 263. CAPITAL EXPENDITURES.

(a) GENERAL RULE.—No deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *

evidence as to any other litigation conducted during the taxable years in question, we are constrained to uphold the respondent's determination on this issue.

With respect to the use of petitioner's home and dormitory in part as a business office, petitioner has testified that the use of the office was primarily related to the litigation pursued during the years in question rather than to his business of prospecting in general. Thus, these items, as well as other expenses such as mailing expenses and post office box rentals (presumably incurred in connection with the litigation), must be disallowed for reasons stated above.

Respondent has disallowed subscription expenses with respect to trade and professional magazines. These expenses, unlike those discussed above, appear from the record to have been related to the conduct of petitioner's trade or business as prospector and mining engineer. We regard such expenditures, therefore, as a deductible expense incurred in the trade or business of petitioner under section 162.

Petitioner has deducted as assessment and prospecting expenses amounts computed on the basis of mileage at the rate of 17 cents per mile of travel. Respondent recomputed such deduction pursuant to Rev. Proc. 64–10, 1964–1 C.B. (Part 1) 667, granting petitioner a deduction computed at 10 cents per mile. Petitioner's contention in this regard is that the 10 cents rate of respondent is arbitrary in that it does not adequately cover the cost of automobile travel. While petitioner's assertion may very well be true, we must deny his claimed deduction for the fundamental reason that he has failed to substantiate the amount of his actual expenses related to the use of his automobile. Rev. Proc. 64–10 merely represents an optional method of computing automobile expenses. The taxpayer is free, notwithstanding such ruling, to establish at trial the actual cost of operating his automobile including such items as depreciation, insurance, oil, gas, license, and repairs. The burden of proof resting as it does on petitioner (Rule 32, United States Tax Court Rules of Practice; *Helvering* v. *Taylor*, 293 U.S. 507 (1935)), he has properly been granted a deduction based upon the optional method provided in Rev. Proc. 64–10 at 10 cents per mile rather than 17 cents per mile that he claimed.

Respondent has disallowed net operating loss carryovers on grounds, stated in our findings above, which appear on their face to be correct. Petitioner, who bears the burden of proving his entitlement to such deductions, has neither introduced any evidence nor attempted to justify these deductions. We therefore have no choice but to uphold respondent's disallowance of these deductions. Similarly, we uphold the respondent's determination with respect to moving expenses.

Finally, respondent has asserted additions to tax under section 6653

(a) for negligence. We think on the basis of the record as a whole that petitioner, in good faith, believed the items he deducted to have been deductible and that such deductions did, for the most part, present substantial issues of law and fact. We therefore hold that petitioner is not liable for the additions to tax asserted by respondent. *Tatem Wofford*, 5 T.C. 1152 (1945); *Herman Senner*, 22 B.T.A. 655 (1931).

*Decision will be entered under Rule 50.*