ADAM J. TOMSYKOSKI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
TOMSYKOSKI v. COMMISSIONER
Docket No. 596-73.
United States Tax Court
T.C. Memo 1974-105; 1974 Tax Ct. Memo LEXIS 215; 33 T.C.M. (CCH) 525; T.C.M. (RIA) 74105; April 29, 1974, Filed. Adam J. Tomsykoski, pro se. Jeffrey C. Kahn, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency of $22,583.76 in petitioner's Federal income taxes for the 1969 calendar year. He has also determined an addition to petitioner's taxes of $1,129.18 under the provisions of section 6653(a), I.R.C. 1954. [1] Because of concessions, the only issues remaining for our decision are the following: (1) Whether petitioner is entitled to deductions in excess of the amount allowed by respondent for expenses, including depreciation, incurred in the business use of his automobiles; (2) Whether petitioner is entitled to deduct the fair rental value of a business office he maintained in his home; (3) Whether petitioner is entitled to deductions in excess of the amounts allowed by respondent for *217 interest expenses, medical dues, drugs and supplies, and insurance premiums; (4) Whether respondent erred in disallowing deductions for bad debt losses claimed by petitioner; (5) Whether any part of any underpayment of taxes by petitioner was due to his negligence or intentional disregard of respondent's rules and regulations. FINDINGS OF FACT Adams J. Tomsykoski (petitioner), was a resident of Simpson, Pennsylvania, at the time he filed the petition herein. He filed a joint Federal income tax return for the 1969 calendar year on the cash basis method of accounting with the district director of internal revenue, Philadelphia, Pennsylvania. Petitioner's wife, who died sometime after 1969, did not join in the petition to this Court. Issue 1. Automobile Expense and Depreciation Petitioner is a doctor, who, during 1969, received almost $78,000 for medical services he provided. During 1969, petitioner owned four cars: Year-Make
Purchase Price (rounded)
New-Used (when purchased) 1968 Ford LTD (LTD)
$5,000
New
1967 Ford Torino (Torino)
3,000
New
1967 Ford Mustang (Mustang)
3,000
New
1963 Chevrolet
3,200
Not in Record
All the Fords were *218 covered, in 1969, by Ford's 5-year or 50,000 mile warranty. Petitioner used these autos for making house calls on patients during 1969, but he kept no records of expenses or actual business usage of such cars during the year. Three of petitioner's children also drove the cars during the year - especially the Mustang and Torino. The Chevrolet was used mostly by petitioner's wife, but because of her illness in 1969 she drove the car less than in prior years. Petitioner also purchased a boat, motor and trailer in 1968 for $3,000. He occasionally took some of his patients for rides on the boat, but again he kept no records as to the usage of the boat during 1969. On his 1969 return, petitioner claimed the following amounts of depreciation on the autos described above: LTD
$2,800
Torino
2,000
Mustang
2,400
Chevrolet
800 TAt trial, petitioner conceded that the above amounts were not correct, and asked us to allow instead, the following as depreciation: LTD
$2,500
Torino
1,500
Mustang
750
Boat
1,500
On his return, petitioner also estimated that he drove the four cars approximately 70,000 miles on business during 1969, and, estimating *219 an average expense of 10 cents a mile, deducted $7,000 as expenses incurred in connection with business use of the autos. In his statutory notice of deficiency, respondent determined that petitioner was entitled to deduct only $2,200 for expenses and depreciation on the cars. He estimated that the cars were driven a total of 25,000 miles in connection with petitioner's medical practice, and relied on the formula described in Rev. Proc. 66-10, 1966-1 C.B. 622-3 in reaching the allowed amount of $2,200. At trial, respondent indicated that he would allow no deduction for depreciation on the boat. Issue 2. Home Office Deduction During 1969, petitioner used 3 rooms of his 14-room family residence as an office in which he carried on some part of his medical practice. Petitioner has purchased part of the house some years ago from his family, with the other part of the home having been willed to him. The home was located in a middle income neighborhood in Simpson. Petitioner paid no rent for occupancy of the residence. On the 1969 return, petitioner claimed a deduction of $1,200 for what he estimated was the fair rental value of the three rooms he used as an office. *220 Respondent, in the statutory notice, disallowed any deduction for such estimated rental value, and instead allowed petitioner a deduction of $180, which was one-fifth of what respondent determined was the total expense petitioner incurred in maintaining the residence. Issue 3. Deduction for Bad Debts In 1969, petitioner made loans to three persons, which he contends totaled $29,935.13. Two of the persons were patients of petitioner's, while the other was a relative who lived on the same street as he did. All three of the alleged debtors died some undetermined time after the loans were made. No notes or other evidence of indebtedness were received by petitioner in connection with the loans, and there is no evidence that any interest or principal was ever paid on the loans. Petitioner did include $17.20 as interest income for 1969, but the source of such income is not disclosed in the record. On his return, petitioner deducted $19,935.13 as a loss resulting from a bad debt, a deduction which respondent has disallowed in full. Issue 4. Miscellaneous Deductions Petitioner would sometimes supply drugs free of charge to his patients. Such drugs were purchased either from *221 drug supply houses, or from local drug stores, but petitioner produced neither canceled checks nor receipted bills to substantiate the amount of his purchases. During 1969, petitioner carried life and disability insurance on himself, and homeowners' insurance on his home and office. No evidence was brought forth at trial, however, as to the premiums paid on such policies. Before the taxable year involved in the instant case, petitioner borrowed $3,000 on his Metropolitan Life Insurance Company policy and borrowed another undisclosed amount from a local bank. No evidence as to interest rates or as to the amounts of any interest actually paid in 1969 was introduced into the record. On his return, petitioner deducted the following amounts as to the above-described items: Drugs and Supplies
$8,000
Insurance
1,387
Interest
750
Medical Dues
1,000
At trial, petitioner alleged that he was entitled to deduct $3,600 for insurance premiums paid in 1969. In his statutory notice, respondent disallowed any deduction for interest expense, and allowed the following amounts on the other items listed above: Drugs and Supplies
$2,400
Insurance
1,387
Medical Dues
350
*222 OPINION Issue 1. Automobile Expense and Depreciation The first issue for our decision is whether respondent erred in allowing petitioner only $2,200 as a deduction for expenses, including depreciation, incurred in connection with petitioner's use during the 1969 calendar year of his four automobiles. Petitioner, who is a doctor, has alleged that he is entitled to a depreciation deduction of $4,750 on said autos and an additional deduction of $7,000 for actual expenses incurred in the use of his cars on house calls. It is, or course, petitioner's burden to show that he is entitled to more than the $2,200 allowed by respondent. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 143, Tax Court Rules of Practice and Procedure. We hold that petitioner has clearly failed to carry such burden. As to depreciation on the autos, petitioner failed to introduce any evidence as to the amount of business use of any of the cars. It is clear that petitioner's wife and three of his children drove the Mustang, Torino, and Chevrolet during the taxable year, yet petitioner has not attempted to even suggest a possible allocation of car use between business and nonbusiness purposes. *223 Furthermore, petitioner set forth no evidence as to the salvage values and useful lives of the autos, elements essential to a proper calculation of a depreciation deduction. Sec. 1.167(a)-1(a), (b), (c), Income Tax Regs.
As to his claim for a deduction of $7,000 for automobile expenses not including depreciation, petitioner has presented no evidence which disputes respondent's determination that the automobiles were driven only 25,000 miles on petitioner's business during 1969. Nor has he presented any evidence to sustain his position that he incurred an average of 10 cents a mile of deductible expenses, above and beyond depreciation, in driving his autos on house calls during 1969. It is clear to us that petitioner has totally failed to overcome the presumption of correctness to which respondent's determination is entitled. Thus, petitioner having failed to carry his burden, we find that the respondent properly relied on the formula presented in Revenue Procedure 66-10, 1966-1 C.B. 622-3, [2] in allowing petitioner a deduction of $2,200 for expenses, including depreciation, relating to his business use of the cars. See J. Bryant Kasey, 54 T.C. 1642, 1650 (1970), *224 affd. 457 F.2d 369 (C.A. 9, 1972), certiorari denied 409 U.S. 869 (1972). At trial petitioner claimed, for the first time, that he was entitled to a depreciation deduction of $1,500 on his boat, motor and trailer. Petitioner having not established that the boat and related equipment did not constitute a facility used in connection with "entertainment, amusement, or recreation" during 1969 (section 274(d) (2); section 1.274-2(e), Income Tax Regs.), must fulfill the substantiation requirements posited in section 274(d) and the underlying regulations. Sec. 274(d); sec. 1.274-5, Income Tax Regs. Suffice it to say that petitioner's uncorroborated statement at trial that he occasionally took patients for rides on the boat does not even come close to fulfilling *225 such requirements, and we thus find that petitioner is entitled to no depreciation deduction on his boat. Issue 2. Home Office Deduction We next consider petitioner's claim for a deduction of $1,200 as representing the imputed rental value of the three rooms in his residence which he used for an office. Because petitioner owned the home and thus paid no rent, we fail to see how the relevant sections of the Code, sections 162(a) and 212, allow him any deductions for a rental expense. Both sections require that the particular expense sought to be deducted have been either "paid or incurred," neither of which characterizations apply to an imputed rental figure. Petitioner may in effect, be arguing that he has foregone rental income for the three rooms by dedicating them to a business use. If this argument has any merit, however, it would follow logically that petitioner must first include rent in his income; a step he has obviously not taken in the instant case. It is clear that what petitioner should have claimed was a depreciation deduction for the home office. However, since the record gives us no assistance in establishing his cost basis in the family residence, we are *226 unable to calculate such a deduction for him. We thus must uphold respondent's allowance of a deduction of $180, which represents respondent's determination of one-fifth of the actual expenses petitioner incurrred in maintaining his home. Issue 3. Deduction for Bad Debts Petitioner next claims a deduction for bad debt losses arising out of alleged loans he made to two of his patients and a relative. Before a deduction may be taken for a bad debt loss under section 166, it must be proved that the debt had real worth at sometime during the taxable year, and that it became worthless by the end of such year. Herbert W. Dustin, 53 T.C. 491, 501 (1969), affd. 467 F.2d 47, 48 (C.A. 9, 1972). We find that petitioner has failed to establish that he is entitled to any bad debt loss deduction for 1969. Petitioner claims to have lent a total of almost thirty-thousand dollars to the two patients and to a relative in early 1969. Without explanation, however, he claims a loss of only $19,935.13. No notes or other evidence of indebtedness were received by petitioner for the alleged loans, and there is no evidence that he ever received any repayments of either *227 principal or interest. On petitioner's return, there is an entry of $17.50 for interest income, but we have no idea whether such represents interest on the alleged debts, or interest income from other sources. Furthermore, petitioner claims that the loans carried a six-percent rate of interest, which should alone have yielded him close to $2,000 of interest income during 1969. On the meager evidence as outlined above, together with the lack of any showing of the financial responsibility of the three debtors, we simply cannot find that a valid and practically enforceable indebtedness existed at any time during 1969.
Even were we to find that the debts did have value during 1969, there is no evidence that they became worthless during the taxable year. All three of the alleged debtors are now deceased, but petitioner introduced no evidence as to the date of their respective deaths, or as to the insolvency of any of their estates. Thus petitioner's proof, both as to the existence of any debts, and as to their becoming worthless during 1969, is entirely deficient. Issue 4. Miscellaneous Deductions Petitioner has alleged that he incurred an interest expense of $750 on two loans *228 - one a $3,000 loan on his insurance policy with Metropolitan Life, the other, a loan for an undetermined amount from a local bank. Petitioner, however, has failed to supply even the most meager proof that he is entitled to any deductions. He introduced no notes or other evidence of indebtedness into the record.He did not show that he had, in fact, made any interest payments on either of the alleged loans at any time during 1969. We hold that petitioner has failed to justify his claim for any interest deduction. As to his claimed deductions for insurance premiums, drugs and supplies, and medical dues, petitioner has introduced no evidence that he is entitled to any greater amounts of deductions than those allowed by respondent. Hence, we uphold respondent's determinations as to each of the three aforementioned items. Issue 5. Negligence Penalty Having Failed to introduce any evidence to rebut the presumptive correctness of respondent's determination that petitioner's underpayment of taxes was due to "negligence or intentional disregard of respondent's rules and regulations," we uphold respondent's determination of an addition to petitioner's tax under section 6653(a). *229 Beause of concessions, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. The Revenue Procedure provides that a taxpayer has an option of claiming 10 cents per mile of deductible expenses, including depreciation, for the first 15,000 miles of business usage of his auto or autos, and 7 cents for each additional mile thereafter. Rev. Proc. 66-10 was superseded for all tax years beginning after December 31, 1969, by Rev. Proc. 70-25, 1970-2 C.B. 506↩.