J. BRYANT KASEY AND MARYANN KASEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kasey v. Commissioner
Docket Nos. 2635-70, 297-72.
United States Tax Court
T.C. Memo 1976-266; 1976 Tax Ct. Memo LEXIS 140; 35 T.C.M. (CCH) 1160; T.C.M. (RIA) 760266; August 23, 1976, Filed J. Bryant Kasey, pro se. Richard A. Jones, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: Respondent determined the following deficiencies in the Federal income taxes of petitioners: Docket No.
Year
Deficiency
2635-70
1966
$12,534.92
2635-70
1967
12,275.11
297-72
1969
951.72 On October 2, 1975, respondent amended his answer to conform the pleadings to the proof in Docket No. 297-72 of these consolidated cases [1] and thereby increased the deficiency in issue for the calendar year 1969 to $1,960.85 pursuant to section 6214(a), Internal Revenue Code of 1954. [2]
Concessions having been made by each party, the following issues remain for our disposition: (1) whether petitioners incurred a net operating loss within the meaning of section 172 of the Code during any qualifying year prior to taxable year 1966, *143 and, if so, whether any portion of such loss may be carried forward to 1966; (2) whether $25,123.57 of royalty income due petitioners from Molybdenum Corporation of America was construtively received by them in 1967 upon its garnishment by their judgment creditors; (3) whether petitioners constructively received $11,565.98 of proceeds from a court ordered sale of certain tungsten and mica deposits in 1967 which was disbursed in final payment of their judgment creditors; (4) whether legal fees in the amount of $36,689.55 involuntarily paid by petitioners to the law firm of Scudder & Forde in 1967 qualify for deduction in that year under either section 162 as ordinary and necessary business expenses or under section 212 as expenses incurred for the production or collection of income; (5) whether petitioners' claimed litigation expenses, if incurred, were properly deductible during the years in issue as ordinary and necessary business expenses or expenses incurred for the production or collection of incoem within the meaning of sections 162 and 212 of the Code; (6) whether petitioner J. Bryant Kasey is entitled to a credit under section 31 for any withheld tax with respect to *144 $4,002.40 he received from Kasey Chemical Corporation in 1969 in return for services rendered; (7) whether all or any portion of the apartment and dormitory rental, telephone, utility, office supply, and post office box rental expenses claimed by petitioners as itemized deductions from prospecting and mining operations during the years in issue, if substantiated, constitute either ordinary and necessary business expenses within the purview of section 162 or expenses incurred for the production or collection of income under section 212; (8) whether petitioners may compute their business-related automobile expense deductions at $.17 per mile when using the optional method of calculation presented in Rev. Proc. 66-10, 1966-1 C.B. 622; (9) whether petitioners may utilize the optional cent per mile automobile business expense formula and properly claim additional itemized business expenses arising from the operation of their automobiles; (10) the year in which certain foreign patents were abandoned by petitioners; (11) whether petitioners incurred expenses or losses of $239.94 for "Clark County Sheriff" in 1966 and $4.60 for "advertising property for sale, expense" *145 in 1967, and whether these expenditures are deductible under any Code provision; (12) whether amounts claimed by petitioners as deductions for "Personal accident insurance," "Driver's insurance," and "fire insurance" are deductible expenses under any Code provision; and (13) whether petitioners incurred and properly deducted various interest, sales tax, group life and hospital insurance, dental, and employment fee expenses during the taxable years in issue. FINDINGS OF FACT Some of the facts have been stipulated by the parties. The stipulations of facts and exhibits attached thereto are incorporated herein by this reference. All pertinent portions are summarized below. J. Bryant Kasey and Maryann Kasey are husband and wife whose legal address was Las Vegas, Nevada when they filed their petitions in these proceedings. They previously had filed joint Federal income tax returns for taxable years 1966, 1967, and 1969 with the Internal Revenue Service Center at Ogden, Utah. Since Maryann Kasey is a party to these proceedings only by virtue of having filed joint returns with her husband for the years in issue, J. Bryant Kasey alone will hereinafter be referred to as the petitioner. *146 During each year in issue petitioner was a chemist and registered metallurgical engineer. He was employed as an analytical chemist by the Bagdad Copper Corporation from July 1963 to January 1967, and served as president and technical director of the Kasey Chemical Corporation from July 16, 1969, through December 31, 1969. In addition to these and other instances of formal employment, petitioner continuously engaged on an individual basis in prospecting for minerals and metallurgical process research for the recovery of metals. These endeavors had borne fruit in prior years in the form of numerous mining claims and domestic and foreign patents covering metal recovery processes. Many of the issues presented herein emanate from a mining venture which both petitioners embarked upon with one Julius A. Paskan in 1951. Petitioners and Paskan owned certain mining claims situated in the Clark Mountain Mining District of San Bernadino County, California. Molybdenum Corporation of America paid the owners $15,000 on June 11, 1951, for an exclusive option to purchase those claims. It subsequently exercised that option on or prior to October 8, 1951, and pursuant to an agreement [3] between *147 the parties, paid the owners $135,000. Under the terms of that agreement, the original owners would receive another $1,850,000 from Molybdenum payable, if at all, when and to the extent that they became entitled to "royalties" under the Fifth section of the agreement. During 1952 petitioner received $37,128.34 from Molybdenum which that company asserted was his share of the royalties provided for in the agreement. A dispute arose between the parties to the June 11, 1951, agreement during 1953 which caused Molybdenum to refuse to make any royalty payments between 1953 and 1963. Moreover, the parties to that agreement have contested the various contents of the agreement in a series of law suits in both state and Federal Courts. See Kasey v. Molybdenum Corporation of America, 176 Cal. App. 2d 346, 1 Cal. Rptr. 393 (Dist Ct. App. 1959); Molybdenum Corporation of America v. Kasey, 176 Cal. App.2d 357, 1 Cal. Rptr. 400 (Dist Ct. App. 1959); *148 Kasey v. Molybdenum Corporation of America,336 F. 2d 560 (9th Cir. 1964); Kasey v. Molybdenum Corporation of America,408 F.2d 16 (9th Cir. 1969); Kasey v. Molybdenum Corporation of America, 467 F. 2d 1284 (9th Cir. 1972). That same 1951 agreement has been the subject of prior litigation in this Court. See J. Bryant Kasey, 33 T.C. 656 (1960); J. Bryant Kasey, 54 T.C. 1642 (1970), affd. per curiam 457 F. 2d 369 (9th Cir. 1972). Molybdenum attempted to deliver royalty payments to petitioner by certified mail between April 27, 1964, and April 28, 1966, in conformity with the 1951 agreement. Those letters, containing checks totalling $55,574.92, were not accepted by petitioner and were returned unopened to the corporation. Two quarterly payments totalling $19,029.52 were refused during calendar year 1966. Petitioner was represented by legal counsel during most of his early negotiations with Molybdenum and during his pre-1960 litigation with that company. The law firm of Scudder & Forde was retained by petitioner in June 1958 and served until its discharge in 1960. A judgment *149 in the amount of $35,604 was obtained by that firm against petitioner in 1966 for unpaid costs and legal services rendered prior to 1960. Molydenum paid Scudder & Forde $25,123.57 on January 16, 1967, pursuant to a court order obtained by them to enforce collection of their earlier judgment.This payment represented the residual balance of the $55,574.92 of royalty payments which petitioner had refused to accept from Molybdenum between 1953 and 1963. Since August 11, 1965, Molybdenum had made intermittent payments to petitioner or creditors of petitioner totalling $30,424.35. Despite the fact that one of those payments was made in 1965 and another in 1967, petitioner included the aggregate of those prior payments in taxable income on his 1966 return. Petitioner has never reported as taxable income the $25,123.57 Molybdenum paid Scudder & Forde during 1967. Since the garnishment of royalties held by Molybdenum did not satisfy fully the outstanding Scudder & Forde judgment, petitioner's mica and tungsten mineral interests in certain mining claims were sold at a sheriff's sale in 1967. Petitioner received $2,434.02 of sale proceeds totalling $14,000, with the balance being paid *150 to Scudder & Forde in full satisfaction of their judgment. Petitioner reported the $2,434.02 he received from that sale as a long term capital gain on Schedule D of his 1967 return. He has never reported the balance paid to Scudder & Forde on that or any subsequent return. In 1958 petitioner obtained patents on a process for the production of ultra-pure tungstic oxide in 12 foreign countries. Foreign patents normally have a 14-20 year life, depending upon the country, which commences running at the date of application.Annual fees typically must be paid to each country by a patent holder in order to keep his patent in effect. Due to a shortage of funds, petitioner ceased making the required annual fee payments on his patents after 1962 and from that time forward considered his patents to be worthless. Accordingly, petitioner deducted in 1966 as an itemized "Abandoned Foreign Patents" expense the $9,118.53 total cost he had incurred in obtaining those patents. Petitioner served as an officer and director of the Kasey Chemical Corporation from July 16, 1969, through December 1969. During that period petitioner was paid $4,002.40 for services rendered the corporation. No portion *151 of this sum was included in gross income on petitioner's Federal income tax return for 1969, and no income tax withholding was paid over to the Internal Revenue Service by the corporation with respect to that amount. Throughout the years in issue petitioner engaged in two distinct and unrelated activities, prosecting and litigation, when he was not serving as an employee of various business enterprises. Petitioner's headquarters for these activities was in an apartment located in Las Vegas, Nevada, which petitioner utilized primarily as his permanent residence. That apartment consisted of approximately 900 square feet of living space divided into a kitchen, combination living room and dining room and two bedrooms. Petitioner's office occupied the smaller bedroom, which contained almost 120 square feet of usable space. That room was not used for any purpose other than mining activities or litigation. Petitioner paid a monthly rental of $155 for this apartment. From January 1, 1966, to January 1967 petitioner resided in Bagdad, Arizona where he had been employed by the Bagdad Copper Corporation since 1963. Petitioner rented a dormitory room from the corporation for $20 per *152 week while employed there. Except for six or eight days each month when he traveled to Los Angeles, California for litigation or to Las Vegas for weekend visits, petitioner remained in Bagdad during this entire period.Petitioner resided in Barstow, California during the early part of January 1969. He later resided primarily in Los Angeles from late January to May 1969 for the purpose of pursuing his law suits against Molybdenum Corporation. While in Los Angeles, petitioner paid $19 per week for lodging. Sometime after May 26, 1969, petitioner moved to Mohave, California where he was employed as a metallurgist for approximately one month before he commenced work with the Kasey Chemical Corporation in Glendale, California. His lodging expense in Mohave $80totalled. Although petitioner spent the latter half of 1969 in Glendale, no evidence has been introduced concerning the cost of any lodging there. Petitioner elected to deduct on his Federal income tax return for the appropriate year: (1) one-half of the annual rental cost of his Las Vegas apartment, (2) one-half of his dormitory expenses in Bagdad, Arizona during calendar years 1966 and 1967, (3) one-half of his lodging expenditures *153 in Mohave and Barstow, California during 1969, and (4) the entire cost of his lodging in Los Angeles during the course of his litigation with Molybdenum. These costs were calculated by petitioner to be $1,068, $935.87, and $1,339.42 for calendar years 1966, 1967, and 1969, respectively. Petitioner also claimed itemized deductions for the following expenses during the years indicated: Expense
1966
1967
1969
Telephone
$63.24
$50.61
$86.57
Utilities
77.77
75.18
87.82
Office supplies and
Post Office Box rent
36.01
Post Office
Box rental
16.80
30.85 These amounts allegedly were expended during the operation of petitioner's office in his Las Vegas apartment. A threshhold question presented here concerns whether these expenses have been properly substantiated. Moreover, if petitioner's litigation expenses are held to be nondeductible, then we must determine the proper allocation of these itemized expenses between his mining and litigation activities. Petitioner's varied business interests and constant litigation caused him to travel many miles by automobile. It is agreed that he drove his personal automobiles the following distances for *154 the indicated purposes: 1966
1967
1969
Litigation
7,676 miles
1,591 miles
9,697 miles
Exploration
6,740 miles
11,601 miles
9,534 miles
Petitioner claimed automobile expense deductions for each year in issue both by itemizing various expenses and by utilizing an optional cent per mile formula which is deemed acceptable by respondent under certain circumstances. The miscellaneous itemized expenses were: Expense
1966
1967
1969
Automobile
amortization
$398.95
$398.95
Automobile
$240insurance.65
254.19
288.31 Nevada car
licenses
61.50
40.50 When computing his other automobile deductions under the alternate cent per mile method presented by Rev. Proc. 64-10, 1964-1 C.B. (Part 1) 667, and Rev. Proc. 66-10, 1966-1 C.B. 622, petitioner multiplied the number of miles driven by $.17 instead of the permissible $.10 per mile. A large portion of the itemized "Litigation Expense" deductions of $1,586.48, $1,045.59, and $2,110.93 taken by petitioner in calendar years 1966, 1967, and 1969, respectively, represents his automobile travel expense to and from trials, calculated at the same $.17 per *155 mile rate as were his business deductions. The remainder reflects miscellaneous out of town meals and parking expenses. While the record is unclear, it appears that all litigation pursued during the years in issue was either a continuation of or related to his original contract dispute with Molybdenum. Various other itemized expenses claimed on petitioner's returns for the years in issue are summarized below: Expense
1966
1967
1968
"Clark County
Sheriff"
$239.94
Advertising
4.60
Accident
insurance
87.00
125.90
90.00
fire ins.
18.90
18.90
Interest
37.95
55.43
Sales tax
46.80
116.00
Dental expense
208.55
Employment fees
53.90 In addition, petitioner claimed a deduction for group life and hospital insurance premiums on his 1966 return in the amount of $293.70. Respondent concedes that $146.85 of that amount was properly deducted, but contends that the balance is nondeductible. Respondent disputes the deductibility of all expenses listed above on the ground of failure of substantiation. OPINION Since petitioner has the burden *156 of proof in these proceedings, Rule 142, Tax Court Rules of Practice and Procedure, his position has been impaired by his reluctance to produce all records pertinent to these cases. However sympathetic we might be to his persistent claim that the apparent 1951 agreement with Molybdenum is in fact void and unenforceable, we cannot find facts here that contradict those established during the course of exhaustive litigation over that very point.If new evidence has been obtained by petitioner, his proper avenue for relief lies in the forum which decided the question against him. 1. Net Operating Loss Carryover
The first issue presented for decision concerns whether petitioner properly deducted $25,818.70 on his income tax return for calendar year 1966 as a net operating loss carryover from prior years within the meaning of section 172 of the Code. After reviewing the record we find no basis upon which to allow any portion of that deduction because petitioner has failed to meet his burden of proof. Petitioner's burden is extraordinarily heavy here because we held in J. BryantKasey,54 T.C. 1642 (1970), affd. 457 F. 2d 369 (9th Cir. 1972), *157 that he was liable for a deficiency in income tax in each of calendar years 1963, 1964, and 1965. Since those are three of the five immediately succeeding years to which an earlier loss must be carried forward, it is obvious from the outset that, absent other proof, we cannot approve the carryover. Because petitioner has failed to substantiate the year in which this alleged loss occurred, his computation of this claimed deduction within the strict guidelines set forth in section 172(d), the unavailability of carryback years within the meaning of section 172(b)(1)(A), and has been unable to explain the effect of our 1970 holding on the required computations, we must disallow the claimed deduction in its entirety. 2. Constructive Receipt of Royalty Income
The second issue is whether $25,123.57 of royalty income due petitioner from Molybdenum Corporation of America was constructively received by him in 1967 upon its garnishment by the law firm of Scudder & Forde. Molybdenum attempted to deliver quarterly royalty payments totalling $55,574.92 to petitioner by certified mail between April 1964 and April 1966. Each letter was returned unopened by petitioner apparently because *158 he believed the 1951 agreement under which those payments were sent was void and unenforceable, despite various judicial decisions to the contrary. The law firm of Scudder & Forde, which had represented petitioner between 1958 and 1960, secured a judgment against him in 1966 for unpaid costs and legal services and subsequently obtained a court order to enforce the collection of a portion of that judgment from Molybdenum in 1967. Prior to the date of Scudder & Forde's court order, Molybdenum had paid out $30,424.35 of the previously unaccepted royalty payments to petitioner's wife or creditors of petitioner. In response to this court order, it paid out the residual amount of $25,123.57 to Scudder & Forde in 1967. This sum has never been reported as income on any of petitioner's income tax returns, although the payment to his wife and all payments to official taxing authorities and creditors between August 11, 1965, and February 16, 1967, were reported as rental "part payment" income on his 1966 return. Respondent contends that this entire sum is taxable to petitioner as 1967 income because it would have been taxable to him in that year if Molybdenum had paid it directly to him. *159 Moreover, respondent asserts that the amount in issue represents royalty income, rather than rental income as previously claimed by petitioner, which concededly is subject to a partially offsetting 23 percent depletion allowance deduction. Again, petitioner failed to produce any evidence whatsoever concerning this issue. Consequently, we sustain respondent's determination on this issue. 3. Constructive Receipt of Sale Proceeds
Petitioner's mica and tungsten mineral interests in certain mining claims were sold at a sheriff's sale in 1967 for $14,000. A substantial portion of the sale proceeds, $11,565.98, was disbursed to Scudder & Forde in full satisfaction of its judgment against petitioner. The remaining $2,434.02 was paid to petitioner, who subsequently reported its receipt on his 1967 Federal income tax return as a long-term capital gain. Respondent concedes that any amounts realized by petitioner from this sale constitute long-term capital gains. Respondent asserts, however, that the $11,565.98 paid to Scudder & Forde was constructively received by petitioner in 1967 because it was paid to a judgment creditor on his behalf and, therefore, the entire gain from *160 this sale should have been reported on Schedule D of petitioner's return. We agree with respondent because the record indicates that petitioner erroneously believed that amounts paid to another were not includable on his return. 4. Deductibility of Legal Fees
Next we must decide whether petitioner was entitled to deduct the $36,689.55 of legal fees and costs which he involuntarily paid Scudder & Forde in 1967 from that year's adjusted gross income as either ordinary and necessary business expenses or expenses incurred for the production or collection of income within the meaning of sections 162 and 212 of the Code. Our determination in this regard turns upon the nature of the legal services rendered in exchange for the fees in issue. Scudder & Forde rendered services to petitioner between 1958 and 1960. Throughout that period petitioner was involved in litigation with Molybdenum in both state and Federal courts, and in both trial and appellate courts. Despite repeated requests for specific data concerning the services represented by the fees in issue, petitioner failed to produce any. Thus we must decide this quesion solely from a review of the official reports of *161 cases which appear to have been tried during the years 1958 through 1960, a letter agreement dated June 6, 1958, outlining the services which petitioner expected to receive from Scudder & Forde, and our prior decision in J. Bryant Kasey,54 T.C. 1642, 1646-1650 (1970), affd. per curiam 457 F. 2d 369, 370 (9th Cir. 1972). Three lawsuits appear to have been the subject of the services rendered petitioner during that period. Two were state court cases which ultimately were reported as Kasey v. Molybdenum Corporation of America,176 Cal. App. 2d 346, 1 Cal. Rptr. 393 (Dist Ct. App. 1959), and Molybdenum Corporation of America v. Kasey,176 Cal. App. 2d 357, 1 Cal. Rptr. 400 (Dist Ct. App. 1959). The remaining action, Kasey v. Molybdenum Corporation ofAmerica, which was pending before the United States District Court for the Southern District of California, was not reported when decided but later was affirmed on appeal at 336 F. 2d 560 (9th Cir. 1964). Our review of these authorities and the agreement entered into between petitioner and Scudder & Forde cause us to conclude that petitioner may *162 not deduct the legal expenses in issue under either section 162 or section 212 of the Code. We determined in J. Bryant Kasey,supra, that other claimed legal expenses associated with these same actions were either to be characterized as personal expenses within the meaning of section 262, or as capital expenditures for defending or protecting title to property within the meaning of section 263. In either case they are not currently deductible. 5. Deductibility of Legal Expenses
Pursuant to this same analysis, we hold that petitioner is collaterally estopped from deducting the other claimed miscellaneous legal expenses of $1,586.48, $1,045.59, and $2,110.63 for taxable years 1966, 1967 and 1969, respectively. We note that some portion of these miscellaneous expenses was probably incurred while petitioner pursued actions not considered in J. Bryant Kasey,supra. We find, however, that the fraction of these expenses associated with other lawsuits is similarly nondeductible because petitioner has not met his burden of proving either the amount of such portion or the nature of any other actions pursued during the years in issue. 6. Payment of Withholding *163 Taxes
Petitioner concedes that he failed to include in taxable income $4,002.40 he received from Kasey Chemical Corporation during 1969 in return for services rendered. The parties have stipulated that no withheld taxes were paid over to the government with respect to these payments, but petitioner nevertheless claims a credit for withholding, as provided in section 31. We are unable to consider petitioner's claim for a section 31 credit because such credit does not enter into the computation of deficiencies determined under section 6211. Sec. 6211(b)(1); Paul Irvin Redcay,12 T.C. 806 (1949). 7. Miscellaneous Business Expenses
During each taxable year in issue petitioner claimed business expense deductions under sections 162 and 212 of the Code for rental and utility expenditures associated with his Las Vegas apartment, his lodging costs while away from Las Vegas, post office box rentals, and office supply expenses. We must decide whether these claimed expenditures were in fact made and, if so, whether they fall within any of the Code provisions granting *164 deductions for business expenses. We are satisfied initially that petitioner conducted mineral explorations with the requisite profit motive throughout the years in issue such that he either was actively carrying on a trade or business or was attempting to produce income from these activities. The record is far from clear, however, as to what the precise expenditures were for these services or supplies, and as to the proper apportionment to be made for expenditures which benefitted two or more interests with differing Federal income tax consequences. Throughout all years in issue petitioner maintained his permanent residence in a Las Vegas apartment. That apartment, for which petitioner paid a monthly rental of $155, contained approximately 900 square feet of living space divided into a kitchen, combination living room and dining room, and two bedrooms. The smaller of the two bedrooms, which contained 120 square feet, was utilized exclusively by petitioner as the office from which he directed his mining activities and pursued the various lawsuits discussed above. Petitioner lived in Bagdad, Arizona from January 1966 through January 1967 in a dormitory room which he rented *165 from his employer for $20 per month. During this period he spent six or eight days a month at his permanent residence in Las Vegas, usually on weekends. Petitioner appears to have resided in Las Vegas throughout the remainder of 1967. The record indicates that petitioner maintained some form of lodging away from Las Vegas during the entire calendar year 1969. He was employed in Barstow, California during the early part of January 1969, where he incurred an unknown amount of lodging expenses.From late January until May 1969 he resided in Los Angeles, California for the admitted purpose of pursuing his litigation with Molybdenum. His lodging costs there were $19 per week. On or about May 26, 1969, petitioner became employed as a metallurgist in Mohave, California. His lodging there amounted to $80 before he moved to Glendale, California about one month later to assume the positions of president and technical director of the newly-formed Kasey Chemical Corporation. The record contains no evidence concerning what lodging expenses he incurred, if any, in Glendale. Petitioner claimed deductions of $1,068.00, $935.87, and $1,339.42 in calendar years 1966, 1967, and 1969 which represented *166 one-half of his total annual lodging costs in each location except Los Angeles.He deducted the entire cost of the lodging expense he incurred in Los Angeles while engaging in litigation with Molybdenum. The issue presented for decision concerns whether any portion of these lodging costs are properly deductible as ordinary and necessary business expenses under section 162 or expenses incurred during the production or collection of income within the meaning of section 212 of the Code. Initially, we find it obvious from the record that petitioner improperly deducted the living expenses incurred in Los Angeles during 1969 on his 1969 return. Absent any evidence that petitioner performed tasks associated with his mineral explorations while living there, we conclude that this temporary residence in Los Angeles was established solely for the purpose of pursuing his litigation with Molybdenum. Since these expenses must then be considered legal expenses, and the record does not disclose the nature of that litigation, we must assume that petitioner was renewing or continuing his quest for title to the mining claims covered in his 1951 agreement with Molybdenum and hold these expenses to *167 be currently nondeductible. Section 162(a)(2) of Code has been interpreted as allowing deductions for business expenses incurred "away from home" if the taxpayer is assigned to a nonpermanent post of duty away from his regular place of business. See, e.g., George Montgomery,64 T.C. 175 (1975); Truman C. Tucker,55 T.C. 783 (1971). No deduction is permitted for such expenses, however, if the taxpayer knows that there is a reasonable probability that he will be employed at his new duty station for "a long period of time." Harvey v. Commissioner,283 F. 2d 491, 495 (9th Cir. 1960). Such a determination must be made from a review of all the circumstances surrounding each case. Applying this analysis to the facts presented, we find that petitioner is not entitled to a deduction for any portion of any business expenses he incurred in Bagdad, Arizona from January 1966 through January 1967, in Barstow, California during January 1969, and in Mohave, California during May and June of 1969. Petitioner had been employed by the Bagdad Copper *168 Corporation in Bagdad, Arizona for more than two years prior to deducting the claimed travel expenses. In light of the record's silence concerning whatever expectations petitioner may have entertained prior to moving to Bagdad, or prior to the years in issue, we have no choice but to hold that by calendar years 1966 and 1967 he should have expected to be in Bagdad for "a long period of time." Therefore, we must disallow his lodging expense deduction because he was not "away from home" as required by section 162(a)(2). Our disallowance of his lodging expenses in Barstow and Mohave, California is predicated upon the record's silence concerning the precise reasoning which lead to petitioner's election to become employed in each area, and the expectations he held concerning the probable duration of each job. We reiterate that the burden of proof here must be carried by petitioner. He has not divulged either his employer or the amount of his alleged lodging expense in Barstow, and has provided only a sketchy picture of his activities in Mohave. This will not suffice. Petitioner did maintain an office in his Las Vegas apartment on a regular basis during each year in issue. Although *169 there is no question that petitioner engaged in profit-seeking mining and exploration activities in each year, his claimed deduction of one half of his annual rentals was excessive and unwarranted in light of the record herein. We find that petitioner's use of the smaller bedroom, measuring ten by twelve feet, as his mining and exploration headquarters constituted 30 percent of its use. Applying our best judgment to the myriad of sketchy details presented, we find that the office was used in connection with his litigation at least 70 percent of the time. On a percentage of available square footage basis, petitioner used 120 of approximately 900 square feet of apartment floor space as his office. Therefore, he is entitled to deduct annually an amount computed by multiplying his annual rentals by the determined percentage of business use, and multiplying that amount by the percentage of total floor space occupied by the smaller bedroom. Portions of petitioner's claimed telephone, utility, office supply, and post office box rental expense deductions for the years in issue are excessive and must be disallowed. All of the expenses represented by these deductions were incurred in *170 Las Vegas, Nevada, where petitioner's residence was located. The controversy over these deductions centers on petitioner's subjective estimation of the percentage of each item which represented an allowable business expense. It appears from petitioner's testimony at trial that he arbitrarily deducted one-half of the annual telephone and utility expenses incurred during the years in issue, all of the office supply expenses in 1966, and an unknown percentage of his annual post office box rentals. In light of our decision concerning his apartment rentals, we conclude that these ancillary expenses also were overstated. Petitioner's prospecting activities were scattered over a broad geographic area during the years in issue here.In addition to the extensive travel required by these various interests, it is very conceivable that numerous communications by letter and telephone were also necessary. The record indicates that petitioner seldom documented his business expenses or segregated them from personal expenditures where a total represented costs incurred in two or more pursuits. Petitioner's testimony at trial failed to clear up this matter. Taking into consideration the periods *171 in which petitioner lived away from Las Vegas, the fact of Mrs. Kasey's continual residence there, and the probable portion of litigation expenses contained in these totals, we find that petitioner is entitled to deduct 15 percent of his annual telephone expenses in taxable years 1966 and 1969, and 35 percent of such expenses in 1967. We find that he is entitled to deduct five percent of his annual utility bills in 1966 and 1969, and 10 percent in 1967. Lastly, we find that he may properly deduct 33 percent of his office supply expenses during 1966 and 25 percent of his annual post office box rentals. Petitioner's evidence on these points was inadequate, but we believe that he regularly maintained this office throughout the years in issue with an intention of realizing a profit from his prospecting activities. 8. Optional Automobile Expense Formula
A significant portion of petitioner's claimed annual expenses were associated with his operation of various automobiles. The parties have stipulated that he drove his personal automobiles 6,740 miles on business in 1966, 11,601 miles in 1967, and 9,534 miles in 1969. We must determine whether petitioner may compute a business *172 deduction for this stipulated mileage under the formulas presented in Rev. Proc. 64-10, 1964-1 C.B. (Part 1) 667, and Rev. Proc. 66-10, 1966-1 C.B. 622, while applying a $.17 per mile multiplier instead of the stated $.10 per mile. Although the parties have stipulated that petitioner traveled an additional 18,964 miles during the years in issue while pursuing his various lawsuits, any deductions claimed by him for this travel are disallowed in accordance with our holding that none of petitioner's litigation expenses are currently deductible. Petitioner defends his use of 17 cents per mile solely on the ground that the permitted 10 cents per mile does not adequately reflect the costs of operating his automobiles. We cannot sympathize with petitioner on this issue for, once again, he has failed to maintain and produce records which could substantiate his claims. In any event, we cannot sanction his use of 17 cents per mile because the wording of the Revenue Procedures authorizing the use of an optional method for computing deductible costs of operating passenger *173 automobiles clearly state that 10 cents per mile is the acceptable rate. Moreover, petitioner is collaterally estopped from questioning this point because we rejected this same argument in one of his prior cases. J. Bryant Kasey,54 T.C. 1642, 1650 (1970). We hold that he is entitled to deduct 10 cents per mile for each of the stipulated annual miles. 9. Use of Formula in Lieu of Itemization
A related issue here concerns the propriety of several miscellaneous annual automobile expense deductions taken by petitioner in addition to the cent per mile deductions. Claimed as deductions were: Expense
1966
1967
1969
Automobile
amortization
$398.95
$398.95
Automobile
insurance
240.65
254.19
$288.31
Nevada car
licenses
61.50
40.50 Each deduction must be disallowed because petitioner's election to utilize the optional cent per mile formula in the revenue procedures cited precluded him from taking additional deductions for the expenses in issue here. It is clearly stated in Rev. Proc. 66-10, 1966-1 C.B. 622, that: *174 A deduction computed under this method shall be in lieu of all operating and fixed costs of the automobile allocable to business purposes. Such items as gasoline (including State and local taxes), oil, repairs, licensetags,insurance, and depreciation are included in operating and fixed costs. (Emphasis added). Use of this formula is not mandatory, it is optional at the taxpayer's election. If petitioner deemed the permitted multiplier to be inadequate, he could have maintained accurate records and deducted his actual operating costs, as we previously advised him. 10.Abandoned Foreign Patents
Prior to the taxable years in issue petitioner had obtained patents in 12 foreign countries on a process he developed for the production of ultra-pure tungstic oxide. In subsequent years he paid an annual fee to each country to keep his patents in effect. A shortage of funds forced petitioner to cease making the required payments after 1962. Deeming his patents worthless after that time because they were no longer effective, petitioner eventually deducted their $9,118.53 cost from income on his 1966 return with the notation "Abandoned Foreign Patents." It *175 is clear from the record that this deduction was improper. The record indicates that foreign patents become totally worthless immediately upon the failure of a patent holder to pay the next annual fee. There is no evidence that any value remained in 1966 which could be the subject of a deduction under any Code section. Therefore, we uphold respondent's determination on this point. Petitioner admits that he considered these patents worthless in 1963; he should have considered their deductibility in that year. 11-13. Miscellaneous Itemized Deductions
All questions remaining for decision pertain to the following miscellaneous payments which were deducted by the petitioner during the years in issue: Deduction
1966
1967
1969
"Clark County
Sheriff"
$239.94
"Advertising
property for
sale"
4.60
Accident
insurance
87.00
125.90
90.00
Fire insurance
18.90
18.90
Interest expense
37.95
55.43
Sales tax
46.80
116.00
Dental expense
208.55
Employment fees
53.90
Group life &
hospital ins.
146.85 Respondent contends that each of these amounts should be disallowed due to petitioner's inability to substantiate his claims. *176 Moreover, respondent asserts that the accident and fire insurance items are nondeductible, even if substantiated, under the authority of James F. Kutz,5 B.T.A. 239 (1926), and section 1.262-1, Income Tax Regs.
Once again, petitioner has failed to provide this Court with more than a modicum of evidence on the issues presented. Many essential elements of his case are absent from the record. We find that petitioner did make all payments which gave rise to the deductions claimed. Nevertheless, several items listed above do not qualify for deduction. The "Clark County Sheriff" and "Advertising property for sale" deductions must be disallowed because we do not know the circumstances under which these expenditures were made. Similarly, the amounts representing accident insurance premiums are disallowed because petitioner has not demonstrated that these expenditures were incurred in a manner which would permit their deduction. In regard to the fire insurance premiums, petitioner vaguely testified that his furniture was covered by those policies without indicating whether any portion of the furniture was used in his business office. Thus, *177 we must disallow these deductions. Petitioner's dental expense deduction must be disallowed because he has not provided us with proof that his total medical payments for 1967 exceeded the three percent of adjusted gross income minimum established for those deductions by section 213(a)(1) of the Code. The employment fees deducted in 1967 were incurred by Maryann Kasey when she terminated one employment and became employed by a baking company's outlet store.Since these fees were directly connected with her business of serving as an employee, and she served each employer in virtually the same capacity, we uphold their deduction. See David J. Primuth,54 T.C. 374 (1970). That portion of petitioner's 1966 deduction for group life and hospital insurance which exceeds the $146.85 conceded by respondent is disallowed. Petitioner has failed to prove the correctness of any additional deduction. We find that petitioner is entitled to the entire sales tax and interest expense deductions claimed in taxable years 1967 and 1969. *178 His entitlement to any itemized deductions, however, is contingent upon his taxes being computed without using the standard deduction permitted by section 144 of the Code. To reflect the conclusions reached herein and the concessions made by the parties, Decisionswill be entered under Rule 155. Footnotes
1. These cases were consolidated for trial, briefing, and opinion by order dated December 11, 1974. ↩
2. All statutory references pertain to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. For a more exhaustive description of that agreement see J. Bryant Kasey,33 T.C. 656, 657-658 (1960), and J. Bryant Kasey,54 T.C. 1642, 1643-1648 (1970), affd. per curiam 457 F. 2d 369↩ (9th Cir. 1972).