T.C. Memo. 1997-408

UNITED STATES TAX COURT

CHARLES H. BUTLER AND JUDITH K. BUTLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24078-94.                    Filed September 15, 1997.

<u>Sandra G. Scott</u> and <u>Stephen M. Moskowitz</u>, for petitioners.

<u>Marion T. Robus</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax as follows:

| Year | Deficiency |
|------|-----------|
| 1991 | $7,669 |
| 1992 | 28,678 |
| 1993 | 1,924 |

The principal issue presented for our consideration is whether petitioners' operation of a farm was an activity not engaged in for profit within the meaning of section 183.[1]  If we find the activity was not engaged in for profit, then we must decide whether legal expenses incurred by petitioners may be deducted under section 162 or 212 as ordinary and necessary expenses incurred with respect to property held for investment.[2]

FINDINGS OF FACT[3]

At the time of the filing of their petition, petitioners Charles H. Butler and Judith K. Butler resided in Pescadero, California.  Charles H. Butler (hereinafter referred to as petitioner husband) was an engineer who designed power plants. Petitioner husband possessed bachelor's and master's degrees in engineering.  Judith K. Butler (hereinafter referred to as petitioner wife) graduated from high school.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioners conceded adjustments in the amounts of $1,805 and $423 with respect to their real properties at Arnold Way, Half Moon Bay, Cal., and Stage Road, Pescadero, Cal., and respondent has conceded that in the 1993 taxable year petitioners are entitled to an additional deduction of $4,859, which represents a portion of a 1992 passive activity loss adjustment.

[3] The parties' stipulation of facts and exhibits are incorporated by this reference.

Petitioners spent approximately 1 year looking for real property to acquire in northern California. On July 25, 1979, they purchased an 80-acre ranch in Pescadero (hereinafter Pescadero property or ranch) for $275,876.80. An artificial 8-acre pond, which also served as a reservoir, was located on the ranch. As part of a larger tract of land, the Pescadero property had formerly been operated as a dairy farm. The ranch had two residences and several large barns and equipment sheds. There also was a granary that had been used as a cheese house.

When petitioners acquired the Pescadero property, they had no prior experience as farmers. Petitioner husband, at the time of trial, owned a subchapter S corporation, Energy Design Engineering Corp. (Energy Design), which provided consulting services to the electric utility industry. Energy Design was intermittently profitable. Petitioner husband also was part owner of Cogeneration Acquisition & Development Corp. (Cogeneration), which furnished consulting services to the development of cogeneration projects as well as electric power projects in the United States. Cogeneration was regularly profitable but eventually ceased business.

The Pescadero property was in a severely neglected condition when petitioners purchased it. Over a period of several years, petitioner husband made substantial improvements to at least one of the residences, such as installing a heating system and

electrical wiring and fixing the roof, which leaked. The plumbing system was also repaired. Petitioner husband also made structural repairs to the barns on the property. The barns had plumbing systems installed and were electrically rewired. Petitioners also repaired and installed fences around the property.

The reservoir added value and was important to the Pescadero property because the land was otherwise "dry". It was utilized for irrigation and livestock purposes. Other than the reservoir itself, the Pescadero property did not have access to water which would independently sustain livestock.

As part of a proposed aquaculture project, petitioner husband seeded the reservoir with fish, such as catfish. Petitioner husband intended to raise and sell fish from the reservoir. However, the project was never fully implemented because a neighbor siphoned off water, causing an insufficient oxygen supply to support aquatic life. Petitioner husband intended to raise fish at a later time.

In 1984, there were floods which affected the Pescadero property, requiring repairs to the damage and cleanup of silt in the reservoir. Subsequently, from 1987 through 1989, there was a drought in the area .

Sometime in 1989, petitioner husband commenced installing an irrigation system on the Pescadero property, utilizing the

reservoir water. The irrigation system had been recommended by the San Mateo Farm Bureau and the U.S. Department of Soil Conservation as the best method to maximize the productivity of the land or livestock. Subsequently, for the next several years, petitioner husband spent significant amounts of money to extend and maintain the irrigation system.

Petitioner husband expected that the Pescadero property would appreciate over time, and he was prepared to invest additional capital toward that end. Petitioner husband believed that the ranch was worth $1 million.

Farming Activity

Prior to the purchase of the Pescadero property, when petitioners resided in Sonoma County, California, petitioner wife worked for 2 years, without pay, for an individual who operated a ranch that raised game birds for hunting purposes. Early in petitioners' ownership of the Pescadero property, petitioner wife, with the intention of starting a similar operation, transported a number of chukars and quail to the Pescadero property. The game bird activity, however, was ultimately unsuccessful.

Subsequently, petitioner wife ascertained that neighboring farms were raising goats and sheep. In turn, she purchased goats and sheep as livestock for the Pescadero property. During the taxable years at issue, petitioners maintained approximately 25

cattle and 60 sheep. At the time of trial, petitioners maintained approximately 22 cattle and 65 sheep. Petitioners may also have raised some goats and horses on the Pescadero property during the years at issue.

Petitioner husband worked on the Pescadero property after his regular work hours and on weekends. He spent, on average, approximately 10 to 12 hours a day on weekends and about 2 hours on weeknights. He repaired the fence around the ranch, and he maintained and extended, as needed, the irrigation system. Petitioner husband repaired the buildings, an activity which he believed was necessary to increase or maintain the value of the property so it would continue to appreciate and be attractive.

Petitioner wife spent approximately 60 to 70 hours per week on the ranch. She handled daily operations on the Pescadero property. In the mornings, she released the sheep locked up in the pens, fed the sheep, filled up the watering troughs, and ensured that none of the livestock were ill or missing. She also checked the structural integrity of the fences. Petitioner wife repaired and cleaned out the barns as necessary. She performed worming operations on the sheep twice a year. Shearing in the spring was not done by petitioners.

At the time of the purchase of the Pescadero property, petitioners had two children. They participated in the 4-H Club program and helped raise the cattle and turkeys. The animals

were judged and, eventually, sold at auction. The children did not reside on the ranch during the years at issue.

There were occasional sales only in 1992, through auctions, of livestock (cattle and sheep) and a goat.

Petitioners were members of the San Mateo Farm Bureau. This organization provided literature and advice on farming as well as farm-related supplies. The Bureau also provided insurance for buildings on the farm. Petitioners also obtained information on agriculture from local farmers as well as publications from the University of California at Davis, the U.S. Soil Conservation Agency, and the U.S. Department of Agriculture.

Dell'Oca Suit

Petitioners executed a water use agreement (agreement) with the owner of an adjoining parcel of land, Conrad J. Dell'Oca (Dell'Oca), in conjunction with the purchase of the Pescadero property. The agreement provided that petitioners and Dell'Oca would have "exclusive dominion" over the reservoir water. Additionally, the agreement stated that there would be restrictions on withdrawals of water during times of shortage if such withdrawals would interfere with the intended use of the pond for protecting and sustaining livestock, fish, and wildlife.

On July 5, 1985, petitioners applied to the California State Water Control Board (water control board) for a permit to divert and store water from an outside stream into the reservoir on the

Pescadero property.  On June 22, 1988, the water control board issued a permit granting petitioners the exclusive right to use the water contained in the reservoir.

On August 22, 1988, petitioners initiated a lawsuit against Dell'Oca in the Superior Court of the State of California, San Mateo County (State court).  Petitioners alleged that they had suffered damages in the form of loss of agricultural income and damage to their livestock, wildlife, fish, and recreational use. In a second amended complaint, petitioners alleged that Dell'Oca's alleged overconsumption of the reservoir water limited petitioners' ability to utilize the reservoir for fire protection, fish and wildlife enhancement, stock watering, recreation, domestic, and irrigation purposes or to entice prospective lessees.  Petitioners also alleged that the value of the Pescadero property had been diminished.  Petitioners sought relief, among other things, through:  (1) A cause of action to quiet title to interest in water; (2) a cause of action to quiet title to interest in land; (3) a cause of action for declaratory relief regarding interest in land (prescriptive easement).

On July 23, 1993, the State court entered final judgment apportioning the parties' use of the water.  Petitioners received the preponderance of the available water arising from the permit issued by the water control board.  The parties were limited in the amount of water they could procure although the legal

restriction did not apply to the incidental use of water by livestock directly at the reservoir site.

Knauss Suit

On February 28, 1991, a lawsuit was filed in the State court against petitioners by Lee R. Knauss and Joan F. Knauss (the Knausses), and other associated parties, to obtain an easement in a roadway bisecting the Pescadero property. The Knauss suit alleged, among other things, that the Knausses had been deprived of access to their adjoining property.

On June 28, 1993, a judgment was filed in the Knauss suit, whereby the State court determined that petitioners had acquired by the doctrine of adverse possession or prescriptive extinguishment all right, title, and interest in the Pescadero ranch roadway. In that regard, the Knausses were found to have no right-of-way or easement in petitioners' property.

Expenses and Other Items

Petitioner husband kept a series of separate folders in a file cabinet for each line item on Schedule F. As each expense was incurred, he obtained a receipt and placed it in the proper folder. Petitioner husband segregated receipts for expenses connected with the farm from those for expenses that were not farm related. No separate checking account was maintained for farm-related expenses because checks relating to the property were infrequent. Petitioner husband believed that he was able to

maintain and retrieve proper records when required to do so.  No records of the number of livestock were maintained.   Petitioner husband intended to go into the farming business so that he could leave the engineering profession.  He expected to make a profit once his herd doubled in size.  Petitioners believed the main obstacle to profitability to be availability of water for the livestock.  Petitioners believed that this factor prevented the number of livestock from expanding.

Petitioners, on their joint Federal income tax returns, reported the following items:

|                          | 1987 | 1989[1] | 1990 | 1991 | 1992 | 1993 |
|--------------------------|------|---------|------|------|------|------|
| Wages                    | $82,107 | $76,000 | $88,300 | $65,678 | $105,344 | $52,532 |
| Interest income          | 4,542 | 11,510 | 14,936 | 21,478 | 9,019 | 9,568 |
| Farm gross income        | 198 | N/A | N/A | 715 | 1,919 | (600) |
| Farm expenses            | (23,470) | (37,538) | (32,613) | (64,086) | (164,566) | (61,111) |
| Net farm income or (loss) | (23,272) | (36,989) | (32,613) | (63,371) | (162,647) | [2](61,711) |

[1]The record does not provide information regarding the 1988 taxable year.
[2]Petitioners apparently added the loss of $600 to the total expenses of $61,111  for a net loss of $61,711.

Petitioners reported that the principal product of their farming activity was "General Livestock".  Petitioners, on their 1991, 1992, and 1993 Schedules F (Profit or Loss from Farming), claimed attorney's fees as "Labor hired",  in the amounts of $45,961, $139,397, and $43,004, respectively.

OPINION

We must decide whether petitioners' activities were "not engaged in for profit" within the meaning of section 183(c). Section 183(a) provides that, if an activity engaged in by an individual is not engaged in for profit, no deduction attributable to that activity shall be allowed except as provided in section 183(b).[4]  Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Sec. 183(c).  Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred in carrying on a business. Section 212 allows a deduction for all the ordinary and necessary expenses paid or incurred for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

Whether deductions are allowable under section 162 or 212 depends on whether the taxpayer engaged in the activity with the objective of making a profit. Elliott v. Commissioner, 90 T.C. 960, 970 (1988), affd. without published opinion 899 F.2d 18 (9th

_____

[4] In the case of an activity not engaged in for profit, sec. 183(b)(1) allows a deduction for expenses that are otherwise deductible without regard to whether the activity is engaged in for profit.  Sec. 183(b)(2) allows a deduction for expenses that would be deductible if the activity were engaged in for profit but only to the extent the total gross income derived from the activity exceeds the deductions allowed by sec. 183(b)(1).

Cir. 1990); Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is not required, petitioners' profit objective must have been bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Taube v. Commissioner, 88 T.C. 464, 478-479 (1987); Beck v. Commissioner, 85 T.C. 557, 569 (1985); Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980).

Whether petitioners possessed the necessary profit objective is a question of fact to be resolved on the basis of all the facts and circumstances of the particular case at hand. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Dunn v. Commissioner, supra at 720. Petitioners here bear the burden of proof on this issue. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Greater weight is given to objective facts than a taxpayer's statement of intent. Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Beck v. Commissioner, supra at 570; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Dreicer v. Commissioner, supra.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to consider in determining whether

an activity is engaged in for profit.  These factors are:  (1) The manner in which the taxpayers carry on the activity; (2) the expertise of the taxpayers or their advisers; (3) the time and effort expended by the taxpayers in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayers in carrying on other activities; (6) the taxpayers' history of income or losses with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayers; (9) whether elements of personal pleasure or recreation are involved.  Not all of these factors are necessarily applicable in every case.  Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); Taube v. Commissioner, supra; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. 28, 34 (1979).  No one factor nor a majority of the factors is necessarily determinative, nor do we reach our conclusion by simply counting the factors that support each party's position.  Keanini v. Commissioner, 94 T.C. 41, 47 (1990); Taube v. Commissioner, supra at 480; Dunn v. Commissioner, supra at 720.

The Manner in Which the Taxpayers Carry On the Activity. The fact that a taxpayer generally carries on an activity, in a businesslike manner and maintains complete and accurate books and records may be indicative of a profit motive.  Similarly, where

an activity was conducted in a manner substantially similar to comparable businesses that are profitable, and where changes were attempted in order to improve profitability, a profit motive may be indicated. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(b)(1), Income Tax Regs.

There is little evidence that petitioners operated their farm with the expectation of profitability. Petitioner husband argues that he has maintained records for his activities. Petitioner husband kept records consisting of receipts that were segregated in folders according to each Schedule F line item. Petitioners did not maintain a separate checking account or a system of ledgers which would have provided a basis for ascertaining revenue and expenses. Significantly, there is nothing in the record showing that petitioners conducted an analysis or investigation of the profitability of farming in their area. Finally, and more significantly, petitioners did not prepare an analysis of the revenues and expenses that their property could achieve with more livestock (either cattle or sheep) to determine whether it could then be operated in a profitable manner.

Petitioners did not demonstrate that the manner in which they conducted the farming operation was reasonably calculated to produce a profitable return. Although petitioners reported their farming activity as "General Livestock", there was no inventory

of the livestock. There were intermittent sales, through auctions, of livestock (cattle and sheep), but only during 1992. Also, there was a 1992 sale of a goat for $35. Petitioners did not engage in a sustained practice of purchasing, culling, or selling the livestock.

Petitioners assert that they were limited in the amount of cash they could infuse into the Pescadero property in order to make the farming activity profitable, repairing the existing structures, and building the irrigation system, as well as attempting to manage and expand the livestock. Petitioners, however, did not attempt to obtain financing to expand the farming activity. In that regard, the irrigation system was not installed until 10 years after the purchase of the Pescadero property.

Petitioner husband contended that he repaired farm buildings to "add value and maintain the value of the property so it will continue to appreciate and be attractive." Petitioners also initiated a lawsuit against Dell'Oca to protect the value of the property from any diminution that would result from the alleged overuse of the water in the reservoir. Petitioners' major focus was on the possibility that the Pescadero property might appreciate in value.

Although petitioner husband contended that he wanted to raise fish in the reservoir as a business activity, he also

contended that he was unable to implement that project because of disputes concerning the water usage. Other than a drought in 1987, the litigation concerning the reservoir apparently was not an impediment to petitioners' use of the reservoir for raising fish.

Petitioners testified that significantly increasing the size of their livestock herd would result in profitability for their farming venture; however, their herd remained approximately the same during the years at issue (25 cattle and 60 sheep) and at the time of trial (22 cattle and 65 sheep).

The Expertise of the Taxpayers or Their Advisers. Petitioners were not experienced farmers, and although petitioner wife had some experience in raising game birds, she did not demonstrate that she took steps to successfully operate a farm. Petitioners attempted to become knowledgeable about the market for cattle and sheep; they sought advice from local farmers, read farming materials from the San Mateo Farm Bureau, and consulted with various institutions such as the University of California at Davis, as well as the U.S. Department of Soil Conservation.

Time and Effort Expended by the Taxpayers in Carrying On the Activity. Petitioners expended significant time in the farming activity. Petitioner husband worked full time as an engineer, and he also worked approximately 30 hours a week (10-12 hours per

day for 2 days on the weekend and 2 hours each weeknight) on the Pescadero property.  Sec. 1.183-2(b)(3), Income Tax Regs.

The Taxpayers' History of Income and Losses With Respect to the Activity.  Under section 1.183-2(b)(6), Income Tax Regs., losses in the initial stages of an activity are not necessarily indicative of a lack of profit motive.  However, when unexplained losses have continued for an extended period of time, they may be probative that an activity is not engaged in for profit.  Allen v. Commissioner, supra at 34.  Specifically, the presence of losses in the formative years of a business is not inconsistent with an intention to achieve a later profitable level of operation.  The goal must be to realize a profit on the entire operation, which presupposes recouping past losses in addition to current expenses.  Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).

Petitioners did not take steps to address the continuous and substantial losses incurred in connection with the Pescadero property.

Petitioners' main argument is that their farm could not be profitable due to ongoing legal disputes.  They assert that they were precluded from expanding their farming operations because of the uncertainty regarding the water supply.  Petitioners did not, however, show that the herd size was maximized to comport with the amount of water available in the reservoir.  Petitioners'

claims are further undermined by the fact that for several years after the purchase of the ranch, and prior to the water use dispute in 1988, they were not limited in utilizing the water in the reservoir (other than by the agreement and the 1987 drought). After the conclusion of the litigation with Dell'Oca, petitioners did not augment or increase the size of their livestock herd even though they were legally guaranteed a significant portion of the reservoir water.

Expectations That Assets Used in the Activity May Appreciate in Value.  Section 1.183-2(b)(4), Income Tax Regs., provides that profit includes expected appreciation in assets such as land. Appreciation may explain a taxpayer's willingness to continue to sustain losses.  Allen v. Commissioner, 72 T.C. at 36; see also Fields v. Commissioner, T.C. Memo. 1981-550.  Unrealized appreciation is relevant to deciding whether the taxpayer has a profit objective.  Lemmen v. Commissioner, 77 T.C. 1326, 1342-1343 n.22 (1981).

Section 1.183-1(d)(1), Income Tax Regs., provides that in order to determine to what extent section 183 and the regulations thereunder apply, the activity or activities of the taxpayer must be ascertained from all the facts and circumstances.[5]

---

[5]

(d) Activity defined--(1) Ascertainment of activity.  In order to determine whether, and to what extent, section 183 and the

(continued...)

Petitioners assert that the sustained losses were offset by the appreciation in value of the Pescadero property. Respondent counters that petitioners' farming activity and holding of the Pescadero property were separate activities and the assets used in each activity must be separately considered with respect to this element.

Petitioners estimated that from 1979 to the time of trial, on the basis of the sale prices of neighboring parcels of land, their farm appreciated at least $724,124 ($1 million, the estimated real estate value, less the $275,876.80 purchase price) and that the appreciation indicates a profit objective. In that regard, petitioners made substantial improvements to the residence(s), the barns, and other buildings, as well as installing an irrigation system. Petitioners made these improvements with the intention of "add[ing] value and maintain[ing] the value of the property so it will continue to appreciate and be attractive."

The circumstances are different with respect to their farming activity. Petitioners stated that once their livestock

---

[5](...continued)
regulations thereunder apply, the activity or activities of the taxpayer must be ascertained. * * * In ascertaining the activity or activities of the taxpayer, all the facts and circumstances of the case must be taken into account. * * * [Sec. 1.183-1(d)(1), Income Tax Regs.]

had sufficiently increased in weight, they would be sold at auction. Petitioners also asserted that their livestock would increase in size and value through breeding. The record does not support petitioners' assertions.

Section 1.183-1(d)(1), Income Tax Regs., provides that

Where land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value. Thus, the farming and holding of the land will be considered a single activity only if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land (that is, deductions other than those directly attributable to the holding of the land such as interest on a mortgage secured by the land, annual property taxes attributable to the land and improvements, and depreciation of improvements to the land).

In that regard, petitioners' gross income derived from their farming activity for the taxable years 1991, 1992, and 1993, was $715, $1,919, and zero, respectively.[6] Petitioners' car and truck expenses for the taxable years, 1991, 1992, and 1993, were $2,601, $7,124, and $3,724, respectively. The nominal income from the farming activity fell far short of the deductions attributable to the farming activity (e.g., the car and truck expenses). Sec. 1.183-1(d)(1), Income Tax Regs. Accordingly,

_____

[6] Petitioners entered a loss of $600 for gross income derived from their farming activity for the 1993 taxable year.

the farming activity and the holding of the land cannot be construed to be a single activity. Petitioners may not utilize the appreciation of the land to support their argument that it should offset the farming losses. See also Hoyle v. Commissioner, T.C. Memo. 1994-592. In that regard, we find that petitioners' expenditures and primary intent were, as evidenced by the nature of their activity and claimed losses, attributable to farming rather than improvement of the realty.

The Success of the Taxpayers in Carrying On Other Activities. Petitioners did not present any evidence that they had been previously engaged in farming activities, or similar activities. Petitioner husband was successful in his professional activities, but there is no showing that he employed his fiscal and financial experience from his professional activity in his farming activity.

Amount of Occasional Profit. Petitioners have not earned any profit from the farming activity during any of the years about which there is evidence in the record.

The Financial Status of the Taxpayers. Substantial income from sources other than the activity in question, especially if the losses generate significant tax benefits, may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8),

Income Tax Regs.[7]  Petitioners had income from petitioner husband's primary profession as an engineer.  The losses with respect to the farming venture allowed petitioners to shelter their outside income.

Elements of Personal Pleasure.  A taxpayer's enjoyment of an activity does not demonstrate a lack of profit objective if the activity is, in fact, conducted for profit as shown by other factors.  Jackson v. Commissioner, 59 T.C. 312, 317 (1972); sec. 1.183-2(b)(9), Income Tax Regs.  Respondent argues that there were elements of recreational and personal pleasure present in this case.  In particular, respondent points out that petitioners' children participated in the 4-H Club program.  Petitioner wife performed the majority of the farming work on the Pescadero property and did not enjoy working with the animals on the ranch.

### Ultimate Conclusion

We hold that petitioners' farming activity was not engaged in for profit within the meaning of section 183 for the taxable years 1991, 1992, and 1993.

-----

[7] The regulation provides:

Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved. [Sec. 1.183-2(b)8), Income Tax Regs.]

Legal Expenses

During the years under consideration, petitioners paid legal fees in connection with two lawsuits. Petitioner husband argues that the litigation expenses incurred in connection with the Dell'Oca and the Knauss lawsuits, respectively, were deductible business expenses. In that regard, petitioners state that the lawsuits were incurred to protect the income arising from the farm activity. Conversely, respondent maintains that the origin of the claim asserted in both lawsuits was in the nature of defending or perfecting title to the Pescadero property and, hence, was capital in nature. Specifically, respondent contends that, under section 263, the legal expenses were not deductible as ordinary and necessary expenses within the meaning of section 162 or 212 because these expenses were capital in nature.

Section 263 provides that no deduction is allowed for capital expenditures. Legal expenses incurred to defend or protect title to property or to acquire or dispose of a capital asset are capital expenditures and are not deductible. Woodward v. Commissioner, 397 U.S. 572, 575-576 (1970); Mosby v. Commissioner, 86 T.C. 190, 196 (1986); Kasey v. Commissioner, 54 T.C. 1642, 1648-1649 (1970), affd. 457 F.2d 369 (9th Cir. 1972); Midco Oil Corp. v. Commissioner, 20 T.C. 587, 591 (1953).

The appropriate test for determining whether petitioners may deduct legal expenses is the origin of the claim, rather than the

predominant purpose in defending and settling the suit.  <u>Woodward</u> <u>v. Commissioner</u>, <u>supra</u> at 577-578.  In <u>Woodward</u>, the Supreme Court rejected the primary purpose test, explaining that "A test based upon the taxpayer's 'purpose' in undertaking or defending * * * litigation would encourage resort to formalisms and artificial distinctions."  <u>Id.</u> at 577.  The test for determining deductibility of legal fees under section 162 is ordinarily an objective one, looking to the "origin" or "character" of the claim rather than the subjective "purpose" of the taxpayer in pursuing it.  <u>Woodward v. Commissioner</u>, <u>supra</u> at 577-578; <u>United States v. Gilmore</u>, 372 U.S. 39, 49 (1963).  The origin of the claim is ascertained by analyzing the facts of the situation at hand.  <u>United States v. Gilmore</u>, <u>supra</u> at 47-48.  We therefore consider the issues involved, the nature of the litigation, the defenses asserted, the background of the litigation, and all facts pertinent to the controversy.  <u>Id.</u>

Petitioners incurred the legal expenses in connection with the Dell'Oca and the Knauss lawsuits.[8]  Petitioners argue that the legal fees expended with respect to the Dell'Oca lawsuit served to protect the current income of the Pescadero property.

---

[8] Respondent concedes that petitioners have verified the amounts claimed for legal expenses on Schedule F for 1991, totaling $45,961.  It appears that petitioners substantiated legal fees of $115,938.37 and $35,837.33, respectively, for the 1992 and 1993 taxable years.  In light of our ultimate disposition of this issue, we do not apportion expenses between the Dell'Oca and the Knauss lawsuits.

In other words, petitioners posit that the origin of the claim involved their farm venture and not the acquisition or disposition of a capital asset (i.e., property rights). Respondent argues that the fundamental issue in the lawsuits involved property rights. In support of that proposition, respondent asserts that petitioners did not claim a loss of farm income in their lawsuit against Dell'Oca.

The record reflects that petitioners initially sought damages in the form of "loss of agricultural income and damage to their livestock, wildlife, fish, and recreational use". In other words, petitioners asserted a loss of farm-related income due to Dell'Oca's alleged overconsumption of the reservoir water. However, petitioners submitted a second complaint which enumerated, among other things, three causes of action in connection with property rights: (1) A cause of action to quiet title to interest in water; (2) a cause of action to quiet title to interest in land; (3) a cause of action for declaratory relief regarding interest in land (prescriptive easement). Moreover, the State court allocated and apportioned the riparian rights on the basis of the parties' respective real property interests. Hence, petitioners obtained a judgment which allowed them to enjoy and utilize a significant portion of the water in the reservoir, thereby enhancing the real property. Accordingly, we find that the origin of the claim in the Dell'Oca lawsuit was the

perfecting of title in the rights to the water in the reservoir on their property.

The Knauss suit also involved property rights. The record demonstrates that petitioners defended against the claim of an easement on the Pescadero property. Petitioners contend that such an easement would have prevented the livestock from freely traversing the property for pasturage purposes and would have prevented petitioners from installing and maintaining the irrigation system. Consequently, petitioners contend that the outcome of the Knauss lawsuit would have affected the income arising from petitioners' farming activity. The origin of the claim in the Knauss lawsuit, however, also involved a defense of property rights. Knauss was denied a right-of-way or easement across the Pescadero property, and the expenses incurred in connection with the Knauss lawsuit are capital in nature and nondeductible.

To reflect the foregoing and due to concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.